# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN ALLIANCE FOR EQUAL RIGHTS**<br>5801 Golden Triangle Blvd Ste. 103-182,<br>Fort Worth, TX 76244,<br><div align="right">*Plaintiff,*</div><br>v.<br><br>**CONGRESSIONAL BLACK CAUCUS FOUNDATION**<br>1225 I St. NW, Suite 550<br>Washington, D.C. 20005,<br><div align="right">*Defendant.*</div> | Case No. 1:26-cv-1123 |

## COMPLAINT

1.      The CBC Foundation's institutional partner, the Congressional Black Caucus, calls itself the "Conscience of the Congress." But racial discrimination is unconscionable. And awarding educational opportunities to some young constituents but not others—based on the color of their skin—is neither conscientious nor legal.

2.      The Foundation's "CBC Spouses Education Scholarship" awards lucrative scholarships, but only to students who are "African American and Black."

> ∧ **Who is eligible to apply for CBC Spouses Education Scholarship?**
>
> African American and Black graduating high school seniors; scholars pursuing undergraduate, graduate or doctoral degrees in a variety of fields.

3.      Even for black students, the Foundation requires applicants to live or study in a district or State that's represented by a member of the Congressional Black Caucus. Racial gerrymandering is plainly illegal when sorting voters on a legislative map.

1

*Miller v. Johnson*, 515 U.S. 900, 911 (1995). It is no less illegal when affording educational opportunities to young people. *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954).

4.      The Civil Rights Act of 1866, better known as §1981, guarantees all persons "the equal right … to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up). Because the Foundation's scholarship involves contracts, it implicates 42 U.S.C. §1981. And because its rigid racial quotas fail strict scrutiny, the program is illegal.

5.      The Alliance has members who wanted to apply for the CBC Spouses Education Scholarship in the past and who are able and ready to apply in the future, should a court make the program equally open to all races. The Alliance is entitled to relief.

## PARTIES

6.      The American Alliance for Equal Rights is a nationwide membership organization dedicated to ending racial classifications across America. This case falls squarely within the Alliance's mission. *E.g.*, *AAER v. Fearless Fund*, 103 F.4th 765 (11th Cir. 2024); *AAER v. ABA*, 2026 WL 161596 (N.D. Ill. Jan. 21); *AAER v. Founders First*, 2024 WL 3625684 (N.D. Tex. July 31).

7.      The Alliance was founded in 2021. It was approved by the IRS as a 501(c)(3) tax-exempt organization the same year. The Alliance has more than 300 members, and its membership continues to grow.

2

8.     The Alliance's standing members are actively involved in the organization. Members voluntarily join. They pay dues. They receive regular updates. And they offer input on the Alliance's activities. The Alliance represents its standing members in good faith.

9.     The CBC Foundation is a nonprofit "educational institute" that was founded in 1976. The Foundation offers "scholarship opportunities" to students nationwide. Nearly a dozen of those scholarships explicitly discriminate based on race, including the CBC Spouses Education Scholarship at issue here.

## JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction under 28 U.S.C. §1331 because this case "arise[s] under" the Civil Rights Act of 1866, a federal law.

11.     Venue is proper in this district because the CBC Foundation "resides" in D.C. 28 U.S.C. §1391(b)(1). A corporation is a resident of the jurisdiction where it is incorporated, *Hazen v. NRA*, 101 F.2d 432, 437 (D.C. Cir. 1938); *Mylan Lab'ys v. Akzo, N.V.*, 1990 WL 58466, at *12 n.14 (D.D.C. Mar. 27), and the CBC Foundation is incorporated in D.C. According to the Foundation's most-recent federal tax form, D.C. is the Foundation's "State of legal domicile."

## FACTS

### I.   The CBC Spouses Education Scholarship racially discriminates.

12.   Every year, the CBC Foundation runs several scholarships whose "primary goal is to cultivate Black American emerging political leaders." Many of those scholarships—including the CBC Spouses Education program—explicitly discriminate.

13.   The CBC Foundation started the CBC Spouses Education Scholarship in 1988. The Foundation has hosted that scholarship every year since, running the program more than thirty times in the last "three decades" alone. (Cleaned up).

14.   The scholarship facially discriminates based on race.

A.   On the CBC Foundation's scholarship page, the Foundation says the program awards "scholarships to academically talented and highly motivated African-American or Black students."

B.   The Foundation's FAQs page asks: "Who is eligible to apply for CBC Spouses Education Scholarship?" The Foundation's answer: "African American[s] and Black[s]."

C.   A brochure from the Foundation reiterates that the scholarship's "eligibility criteria" require "selected applicants" to "be qualified, African American or black students." (Cleaned up). The Foundation strictly enforces those "eligibility requirements," including the race-based one, which it has had in place "[s]ince 1988."

4

15. The scholarship's purpose is also racially discriminatory, as further revealed by the statements of the Foundation's congressional affiliates. "This scholarship," CBC member Hank Johnson observed, "is awarded to … African American students." Jonathan Jackson, another member of the Congressional Black Caucus, likewise said the program "awards scholarships to … African American students." CBC Members Frederica Wilson and Terri Sewell also said the scholarship is "open to all African American or Black students."

16. The scholarship's application enforces the race-based bar. To complete the application, students must answer a question that says: "Please indicate your race/ethnicity." This question is mandatory.

17. The scholarship's racial results confirm its racial purpose. To date, the Foundation has never identified a nonblack winner. The Foundation has no comprehensive list of past winners broken down by race; but on information and belief, including the Foundation's past publications identifying winners and other statements about the program, 100% of prior winners have identified as black.

18. The CBC Spouses Education Scholarship also discriminates another way. On the CBC Foundation's FAQs page, the Foundation states, "You must be a constituent of a Congressional Black Caucus Member … to be eligible for the CBC Spouses Education Scholarship." The scholarship's application page makes the same point, noting that applicants must "[r]eside or attend an academic institution in a CBC Member's District."

5

19. That requirement discriminates based on the race of a student's representative. The Congressional Black Caucus's "membership is racially exclusive." Membership is open only to Senators and Representatives who are black. And that "rule," according to one of the Caucus's members, is "clear" and well "understood." (Quoting Rep. William Lacy Clay).

20. After Representative Stephen Cohen, a white man, tried to become "the first white member of the Congressional Black Caucus," he abandoned his efforts because several "current and former caucus members" told him that "whites need not apply." As one CBC member put it, Representative Cohen "does not, and cannot, meet the membership criteria, unless he can change his skin color." (Quoting Rep. William Lacy Clay). So because he is not black, Cohen is the only Representative who represents a majority-black district and who is not a member of the CBC.

21. Even if facially race neutral, the CBC-member requirement is a proxy for race and has the purpose of selecting students based on race. With the exception of Cohen, all majority-black districts have a Representative who is a member of the CBC. According to the CBC, its members represent over 40% of all black Americans. Many of the districts these members represent were designed, under section 2 of the Voting Rights Act, to ensure that a concentrated black population could elect their representative of choice. And because the CBC includes D.C.'s nonvoting delegates and Senators, its members represent all of D.C., Maryland, and Georgia, which have the highest or near-highest black populations by percentage of any State.

## II.   The scholarship is contractual.

22.   The scholarship is contractual in nature.

23.   The scholarship program itself is a contest. The program is highly competitive, offering only "400 scholarships" annually despite receiving "nearly 3,000 applications" a year. When selecting winners, the CBC Foundation considers only the most "talented" and "motivated" students. The Foundation thus picks winners based on the best "[p]ersonal [s]tatement," where applicants must write and produce a unique, three-minute video.

24.   When students apply, they get the chance to compete for lucrative "awards." Those awards range "from $2,500 - $20,000" in scholarship money. The CBC Foundation offers "more than 300" scholarships a year, costing the Foundation over "$11 million" in the last three decades.

25.   In exchange for a chance to compete for the prizes, applicants must agree to a license. The application requires applicants to sign a license that says, "I further hereby give permission to CBCF to use or publish any photos, text, artwork, and information submitted to this application."

26.   The information that students must license away—including their name, image, and likeness; their private information; and their intellectual property—is valuable to them. The license covers the applicant's "[v]ideo [r]esponse" containing their unique "[p]ersonal [s]tatement." It covers the applicant's "professional headshot," which the Foundation "use[s] in reports and biographies both internally and externally."

7

And it covers the applicant's resume, "transcript(s)," and personal "information" like their name, gender, birthday, citizenship status, military status, race, address, phone number, undergraduate information, and GPA.

27. The information that students must license away is also valuable to the CBC Foundation. The Foundation regularly uses this applicant information in its annual publications. And those publications are marketing materials that the Foundation uses to generate goodwill and to solicit money from "donors."

28. The CBC Foundation treats its scholarship program as involving binding contracts. When students apply, the Foundation makes them "certify that all information in this application is true and accurate," warning them that "any misrepresentation will result in the disqualification of [their] application." And immediately after that certification, the Foundation makes applicants provide their "Electronic Signature."

### III.   The scholarship injures the Alliance's members.

29. The Alliance has members who are being harmed by the CBC Foundation's discrimination, including Students A and B. The Alliance's standing members all authorized the Alliance to vindicate their rights in this suit because they lack the expertise and resources to bring a lawsuit themselves. And all are ready and able to apply for the scholarship at the next open opportunity, including the cycle that's scheduled to begin in March 2027, once a court grants adequate relief.

30. **Student A:** Student A satisfies all the objective minimum eligibility criteria for the scholarship, aside from the one requiring him to be black. Student A is Asian.

A.    Student A is a U.S. citizen.

B.    He has a nearly perfect GPA.

C.    He is a rising college freshman who will study full time at an accredited university in the fall.

D.    He is not an immediate relative of, or otherwise associated with, anyone in the Congressional Black Caucus, the CBC Foundation, or the CBC Spouses.

E.    He lives in a jurisdiction that is represented by a Congressional Black Caucus member. And the college he will soon attend is also represented by a Congressional Black Caucus member.

31.    Student A exhibits leadership and is active in his community. Among other things, he co-founded an organization that helps educate students in his community.

32.    Student A is sincerely interested in applying for and winning the scholarship.

A.    This fall, Student A will attend a university where tuition costs well over $50,000 per year. Without scholarships, Student A must take out tens of thousands of dollars in loans.

B.    Student A has applied for many scholarships, including one offered by a university and one offered by a private company. He has opted into all

scholarship opportunities that were offered as part of his undergraduate applications.

C.     Student A applied to the CBC Spouses Educations Scholarship during the 2026 cycle. In March 2026, Student A submitted his application to the Foundation, filling out all the required information, answering all the required questions, uploading all the required documents, and clicking submit before the March 27 deadline. He spent substantial time completing the application, coordinating a letter of recommendation, reviewing his resume, and completing his personal statement. And after he completed the application, he got a receipt from the CBC Foundation, which said his application was "[s]ubmitted." But because he is not black, the Foundation will not consider his application or award him any money—absent judicial relief.

33.     Student A remains ready and able to apply again in 2027, 2028, 2029, and 2030, when he will be a college freshman, sophomore, junior, and senior respectively. If a court ordered the CBC Foundation to make its scholarship equally open to all races, Student A would immediately apply at the next open opportunity, including for the 2027 cycle that will begin next March. Student A already has his application materials from 2026, which he can consult and use again when he reapplies.

34.     **Student B:** Student B satisfies all the objective minimum eligibility criteria for the scholarship, aside from the one requiring him and his representative to be black.

Student B is Hispanic. And he does not live or attend school in a district represented by a CBC member.

  A.  Student B is a U.S. citizen.

  B.  He has over a 3.7 GPA.

  C.  He is a graduate student who goes to school full time at an accredited university in the Northeast.

  D.  He is not an immediate relative of, or otherwise associated with, anyone in the Congressional Black Caucus, CBC Foundation, or the CBC Spouses.

35. Student B exhibits leadership and is active in the community. Among other things, Student B is a leader at his local church. He is active in his local conservation association. And he volunteers at a local animal-rescue organization.

36. Student B is sincerely interested in applying for and winning the scholarship. Throughout his time in college and graduate school, Student B has regularly sought out scholarships.

37. Student B wanted to apply to the CBC Spouses Education Scholarship during the 2026 cycle. While the application window was still open, Student B filled out all the required information, including his name, gender, birthday, citizenship status, military status, work authorization, race, address, cell-phone number, programmatic interests, first-generation college status, undergraduate-degree status, intended major, and GPA. He also prepared an outline for his video "personal statement." He would have

given "permission to [the Foundation] to use or publish any photos, text, artwork, and information submitted to this application." He also would have "certif[ied] that all information in this application is true and correct." And he would have provided his "Electronic Signature," along with the "Date" that he signed the application, all before the March 27 deadline.

38. Student B did not take the last step of clicking "submit," however, because he realized his application was futile due to the Foundation's racial discrimination. Student B is not black. He does not live or attend school in a CBC member's district. And Student B's representatives cannot join the Congressional Black Caucus because they are not black either. But for these racial requirements, Student B would have timely submitted his completed application and competed for the funds in the 2026 cycle. But when the application window closed on March 27, 2026, he permanently lost the opportunity to do so.

39. Student B remains ready and able to apply for the scholarship. If a court ordered the Foundation to make its scholarship equally open to all students, regardless of their race and the race of their representatives, then Student B would immediately apply at the next available opportunity, including the next cycle of the scholarship that will open in March 2027. Student B still has his application materials from the 2026 cycle, which he can consult and use again in a future cycle.

40. Students A and B are not the only members of the Alliance that are able and ready to apply for the scholarship, once a court orders adequate relief.

## CLAIMS FOR RELIEF
### Count One: Racial Eligibility Requirement
### (42 U.S.C. §1981)

41.    The Alliance repeats and restates each of its prior allegations.

42.    Under §1981, "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts." 42 U.S.C. §1981(a).

43.    Section 1981 covers the CBC Foundation. The statute explicitly covers "nongovernmental discrimination." 42 U.S.C. §1981(c); *accord Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). It "provides a cause of action" to challenge private racial discrimination. *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986); *accord Johnson*, 421 U.S. at 459-60. And it covers "private parties" like the Foundation. *Fearless Fund*, 103 F.4th at 769; *accord Founders First*, 2024 WL 3625684, at *1 (applying §1981 to "a nonprofit organization").

44.    Section 1981 also covers discrimination against nonblack persons, including the Alliance's members. The statute prohibits discrimination "against, or in favor of, any race." *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003). Titled "Equal rights under the law," Section 1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 208 (2019), thus protecting "the equal right of all persons … to make and enforce contracts without respect to race," *Domino's*, 546 U.S. at 474 (cleaned up). Section 1981's "broad terms" ban discrimination against "any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-96 (1976).

13

45.     The CBC Spouses Education Scholarship is a "contrac[t]." 42 U.S.C. §1981(a). Under §1981, a contract is merely "'an agreement to do, or refrain from doing, a particular thing, upon sufficient consideration.'" *Fearless Fund*, 103 F.4th at 775. The program fits that definition: It offers applicants a shot at lucrative scholarships in exchange for a license to use their intellectual property, personal information, and more. *Supra* ¶¶21-27; *Fearless Fund*, 103 F.4th at 775; *Founders First*, 2024 WL 3625684, at *3 n.7. It is also a contest, *supra* ¶23, a type of unilateral contract covered by §1981. *See AAER v. Fearless Fund*, 2023 WL 6295121, at *4 (N.D. Ga. Sept. 27) (agreeing that "courts construe contests as offers for a unilateral contract"); *accord Hampton v. Dillard Dep't Stores*, 247 F.3d 1091, 1104 (10th Cir. 2001); *Personavera, LLC v. Coll. of Healthcare Info. Mgmt. Execs.*, 2021 WL 1313108, at *4 (E.D. Pa. Apr. 8).

46.     The scholarship implicates rights that §1981 protects. Because the statute protects the right to "*make … contracts*," 42 U.S.C. §1981(a) (emphasis added), it provides relief when discrimination "blocks the creation of a contractual relationship," *Domino's*, 546 U.S. at 476. So "a contractual relationship need not already exist" because the law "protects the would-be contractor along with those who already have made contracts." *Id.* Because of that fact, a defendant violates "§1981 when, for racially motivated reasons, they prevented individuals who 'sought to enter into contractual relationships' from doing so." *Id.* The Foundation is doing that here. *Supra* ¶¶12-17.

47.     The CBC Foundation also discriminates in the performance, modification, and terms of its contracts. Section 1981 mandates equality in all the "benefits,

privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(b). Even if students of all races must give up the same rights to the Foundation when they apply, the Foundation extends different terms and benefits to students depending on whether they are black. Most obviously, only black students can be considered for or win a scholarship. *See supra* ¶¶12-17.

48.     The Foundation's racial discrimination is intentional. "[P]roof of a facially discriminatory … policy"—or even "a corporate decision maker's express[ed] … desire to avoid" contracting with members of a certain race—is "direct evidence of discrimi-natory intent." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (cleaned up). Here, there's both. The scholarship "facially discriminat[es]" by barring applicants who are not black. *Id.*; *see supra* ¶¶15-17. And the CBC Foundation's "decision maker[s]" have expressed a "desire to avoid" contracting with non-blacks by broadcasting their racial bar online. *Amini*, 440 F.3d at 359 (cleaned up); *see supra* ¶¶15-17. So the Alliance "is not required to make any further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014).

49.     Because the program violates §1981, it is subject to strict scrutiny. *Gratz*, 539 U.S. at 276 n.23. "[A]ll racial classifications … must be analyzed by a reviewing court under strict scrutiny." *Adarand Constructors v. Pena*, 515 U.S. 200, 227 (1995); *see Gratz*, 539 U.S. at 276 n.23 (same for §1981). And the Foundation "bears the burden" of proving that the scholarship satisfies that test. *Fisher v. UT-Austin*, 570 U.S. 297, 310

(2013) (cleaned up). It cannot meet that "daunting" standard. *SFFA v. Harvard*, 600 U.S. 181, 206-07 (2023).

50.    The Foundation's interests are not compelling. The Supreme Court "ha[s] identified only two compelling interests that permit resort to race-based government action": "One is remediating specific, identified instances of past discrimination that violated the Constitution or a statute," and the other is "avoiding imminent and serious risks to human safety in prisons." *Id.* at 207. Neither exists here. The Foundation does not even ask applicants if they have suffered prior discrimination. And a generalized interest in diversity is not compelling. *See Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 354 (D.C. Cir. 1998).

51.    The program is not narrowly tailored to achieve any compelling interest. By barring all non-blacks from the program, the scholarship imposes an illegal "quota," which is not narrowly tailored to any permissible goal. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 507 (1989); *accord Hammon v. Barry*, 826 F.2d 73, 79 (D.C. Cir. 1987). That quota operates as a negative for non-blacks. *Harvard*, 600 U.S. at 218-19. And it has no "'end point.'" *Id.* at 221; *see supra* ¶13. The Foundation thus cannot show "the most exact connection between justification and classification" that strict scrutiny requires. *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280 (1986); *Aiken v. Memphis*, 37 F.3d 1155, 1164 (6th Cir. 1994).

## Count Two: CBC Constituent Requirement
## (42 U.S.C. §1981)

52. The Alliance repeats and restates each of its prior allegations.

53. As explained, §1981 bars discrimination in contracting against any race; the CBC Spouses Education Scholarship implicates contracts and rights that §1981 protects; and any racial discrimination in the program cannot satisfy strict scrutiny. *See supra* ¶¶40-49.

54. The scholarship independently violates §1981 by barring applicants unless their representative is a member of the CBC.

55. Section 1981 bans discrimination based on the race of someone the would-be contracting party "associat[es]" with. *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir. 1986); *see also, e.g.*, *Fiedler v. Marumsco Christian Sch.*, 631 F.2d 1144, 1150 (4th Cir. 1980) (collecting cases); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) (collecting cases). The scholarship violates that rule by discriminating against applicants based on the race of their congressional representatives. *See supra* ¶¶18-21.

56. The constituent requirement also violates §1981 because it is a proxy for the race of the applicants that has the purpose and effect of favoring black applicants. *Supra* ¶¶18-21.

# PRAYER FOR RELIEF

57.    The Alliance respectfully asks this Court to enter judgment in its favor and

against the CBC Foundation and to provide the following relief:

A.    A declaratory judgment that the CBC Spouses Education Scholarship violates 42 U.S.C. §1981.

B.    A temporary restraining order and preliminary injunction that bars the CBC Foundation, pending further order of the Court, from closing the program's application window or selecting winners.

C.    A permanent injunction barring the CBC Foundation from knowing or considering race in any way in the program—including by removing all criteria that are facially neutral but that can be used as, or are intended to be, proxies for race.

D.    Any equitable relief needed to undo the Foundation's discrimination, including an order forcing the Foundation to reopen the application process, to rerun the application process under race-neutral criteria, and to waive criteria like the one requiring applicants to be current college or graduate-school students.

E.    Nominal damages of $1.

F.    Reasonable costs and expenses of this action, including attorneys' fees and prejudgment interest, under 42 U.S.C. §1988 and any other applicable laws.

G.    All other relief that the Alliance is entitled to.

Dated: April 2, 2026                          Respectfully submitted,

                                              */s/ Cameron T. Norris*
                                              Thomas R. McCarthy
                                                (D.D.C. No. 489651)
                                              Cameron T. Norris
                                                (D.D.C. No. VA083)
                                                *Lead Counsel*
                                              R. Gabriel Anderson
                                                (TX Bar #24129302)*
                                              CONSOVOY MCCARTHY PLLC
                                              1600 Wilson Blvd., Ste. 700
                                              Arlington, VA 22209
                                              (703) 243-9423
                                              tom@consovoymccarthy.com
                                              cam@consovoymccarthy.com
                                              gabe@consovoymccarthy.com

                                              *D.D.C. bar application forthcoming

                                              *Attorneys for the American Alliance for Equal
                                              Rights*

19