# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS and DEFENDING EDUCATION,<br><br>Plaintiffs,<br><br>v.<br><br>CONGRESSIONAL BLACK CAUCUS FOUNDATION,<br><br>Defendant. | Civil Action No. 1:26-cv-01123-JDB<br><br>**ORAL ARGUMENT REQUESTED** |

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

Alphonso David (*pro hac vice* application forthcoming)
GLOBAL BLACK ECONOMIC FORUM
34 35th Street, Suite 5A
Brooklyn, New York 11232
Tel: (646) 872-1924
alphonso.david@gbef.com

Gregg J. Costa (*pro hac vice* application forthcoming)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Tel: (346) 718-6600
gcosta@gibsondunn.com

Katherine M. Marquart (D.C. Bar No. 1044618)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071
Tel: (213) 229-7000
kmarquart@gibsondunn.com

Jason C. Schwartz (D.C. Bar No. 465837)
Stuart F. Delery (D.C. Bar No. 449890)
Zakiyyah T. Salim-Williams (D.C. Bar No. 90043875)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Tel: (202) 955-8500
jschwartz@gibsondunn.com
sdelery@gibsondunn.com
zswilliams@gibsondunn.com

Mylan L. Denerstein (*pro hac vice* application forthcoming)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
mdenerstein@gibsondunn.com

*Attorneys for Defendant Congressional Black Caucus Foundation, Inc.*

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION.............................................................................................................1

II.  BACKGROUND..............................................................................................................3

III. LEGAL STANDARD .....................................................................................................7

IV.  ARGUMENT ...................................................................................................................8

    A.   This Court Lacks Subject Matter Jurisdiction ....................................................8

        1.   Plaintiffs' claim that CBCF will apply a race-based eligibility criterion is not ripe (Count One)....................................................................8

            a)   Plaintiffs' claim that CBCF will discriminate is anticipatory and unfit for judicial decision .......................................................................9

            b)   Plaintiffs will not suffer hardship if the Court withholds consideration of their anticipatory claims.................................................11

        2.   For the same reasons, Plaintiffs lack standing to challenge the alleged racial requirement (Count One).......................................................12

        3.   At the very least, Plaintiffs lack standing to sue on behalf of the two students who never applied for the Scholarship (Count One) ............................14

        4.   Plaintiffs lack standing to challenge an application cycle that has not been announced (Counts One and Two) .......................................................15

        5.   The Speech or Debate Clause divests the Court of subject matter jurisdiction (Count Two)..............................................................................16

    B.   Plaintiffs Have Not Plausibly Alleged a Violation of Section 1981...............................18

        1.   Plaintiffs fail to plausibly allege each element of a Section 1981 claim (Count One)   ................................................................................................19

            a)   Plaintiffs fail to plausibly allege intentional discrimination because the Scholarship has no racial requirement...........................................19

            b)   Plaintiffs' anonymous members fail to plausibly allege but-for causation ..22

            c)   Plaintiffs fail to plausibly allege that the scholarship is a contract...............24

        2.   Plaintiffs fail to allege that the member-district requirement discriminates based on race, as required by Section 1981 (Count Two)...................................27

a)    Plaintiffs fail to allege proxy discrimination ................................................27

b)    Plaintiffs fail to allege associational discrimination ....................................29

C.    Plaintiffs Cannot State a Claim Because CBCF's Charitable Donations and Related Speech are Protected by the First Amendment ................................................................32

V.    CONCLUSION ............................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adetoro v. King Abdullah Acad.*,
  585 F. Supp. 3d 78 (D.D.C. 2020) ...................................................................22

*Albuquerque Indian Rts. v. Lujan*,
  930 F.2d 49 (D.C. Cir. 1991) ..........................................................................14

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*,
  103 F.4th 765 (11th Cir. 2024) ..........................................................12, 25, 26

*Animal Legal Def. Fund, Inc. v. Vilsack*,
  111 F.4th 1219 (D.C. Cir. 2024) .....................................................................12

* *Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) .................................................8, 12, 13, 14, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................8, 21, 22

*Baker v. Wilmington Trust Co.*,
  320 F. Supp. 2d 196 (D. Del. 2004) ................................................................31

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) ......................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................8

*Bradley v. Gannett Co.*,
  2025 WL 2533504 (E.D. Va. Sept. 3, 2025) ...................................................21

*Branton v. FCC*,
  993 F.2d 906 (D.C. Cir. 1993) ........................................................................13

*Bray v. RHT, Inc.*,
  748 F. Supp. 3 (D.D.C. 1990) .........................................................................19

*Brooks v. Air Line Pilots Ass'n, Int'l*,
  630 F. Supp. 2d 52 (D.D.C. 2009) ..................................................................13

*Carney v. Adams*,
  592 U.S. 53 (2020) ..........................................................................................15

* *Citizens United v. FEC*,
  558 U.S. 310 (2010) ..................................................................................32, 33

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................................................13

*Clyde v. Walker*,
  619 F. Supp. 3d 193 (D.D.C. 2022), *aff'd*, 2023 WL 6939987 (D.C. Cir. Oct.
  20, 2023) ..........................................................................................................17

* *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,
  589 U.S. 327 (2020) ..................................................................................19, 22

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
  473 U.S. 788 (1985) ........................................................................................33

*Correll v. Amazon.com, Inc.*,
    2023 WL 6131080 (S.D. Cal. Sept. 19, 2023) ........................................................................23

*CTIA–The Wireless Ass'n v. FCC*,
    530 F.3d 984 (D.C. Cir. 2008) ...........................................................................................9

*De La Fuente v. DNC Servs. Corp.*,
    2019 WL 1778948 (D.D.C. Apr. 23, 2019) ............................................................................23

*Doe v. McMillan*,
    412 U.S. 306 (1973) ...........................................................................................17, 18

*Doe v. Off. of Pers. Mgmt.*,
    813 F. Supp. 3d 156 (D.D.C. 2025) ....................................................................................7

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470 (2006) ...........................................................................................19, 24

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975) ...........................................................................................17

*Erby v. United States*,
    424 F. Supp. 2d 180 (D.D.C. 2006) ....................................................................................7

*Exxon Mobil Corp. v. Fed. Energy Regul. Comm'n*,
    501 F.3d 204 (D.C. Cir. 2007) ...........................................................................................8

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ...........................................................................................13

*Fiedler v. Marumsco Christian Sch.*,
    631 F.2d 1144 (4th Cir. 1980) ...........................................................................................30, 31

*Fields v. Off. of Eddie Bernice Johnson*,
    459 F.3d 1 (D.C. Cir. 2006) ...........................................................................................17

*First Choice Women's Res. Centers, Inc. v. Davenport*,
    146 S. Ct. 1114 (2026) ...........................................................................................33, 34

*Floyd v. Amite Cnty. Sch. Dist.*,
    581 F.3d 244 (5th Cir. 2009) ...........................................................................................29, 30

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
    458 U.S. 375 (1982) ...........................................................................................19

*Grand Lodge of Fraternal Ord. of Police v. Ashcroft*,
    185 F. Supp. 2d 9 (D.D.C. 2001) ....................................................................................12

*Griffin Indus., Inc. v. Irvin*,
    496 F.3d 1189 (11th Cir. 2007) ...........................................................................................20, 21

*Guinn v. United States*,
    238 U.S. 347 (1915) ...........................................................................................28

*Hampton v. Dillard Department Stores, Inc.*,
    247 F.3d 1091 (10th Cir. 2001) ...........................................................................................26

*Haney v. Marriott Int'l, Inc.*,
    2007 WL 2936087 (D.D.C. Oct. 9, 2007) ............................................................................24

*Haymon v. District of Columbia*,
    610 F. Supp. 3d 101 (D.D.C. 2022) ....................................................................................4

iv

*Hearne v. Bd. of Educ. of City of Chicago,*
  185 F.3d 770 (7th Cir. 1999) ........................................................................................28

*Hemp Indus. Ass'n v. DEA,*
  36 F.4th 278 (D.C. Cir. 2022)........................................................................................25

*Herbert v. Nat'l Acad. of Scis.,*
  974 F.2d 192 (D.C. Cir. 1992)..................................................................................3, 7, 9

*Holcomb v. Iona Coll.,*
  521 F.3d 130 (2d Cir. 2008)...........................................................................................30

*Int'l Bhd. of Teamsters v. United States,*
  431 U.S. 324 (1977).................................................................................................15, 23

*Jenner & Block LLP v. U.S. Dep't of Just.,*
  784 F. Supp. 3d 76 (D.D.C. 2025)..................................................................................34

*Kaempe v. Myers,*
  367 F.3d 958 (D.C. Cir. 2004) .......................................................................................19

*Kent v. Ohio House of Representatives Democratic Caucus,*
  33 F.4th 359 (6th Cir. 2022) .....................................................................................17, 18

*Kramer Assocs. v. Ikam, Ltd.,*
  888 A.2d 247 (D.C. 2005) ..............................................................................................25

*Larochelle v. Wilmac Corp.,*
  210 F. Supp. 3d 658 (E.D. Pa. 2016), *aff'd*, 769 F. App'x 57 (3d Cir. 2019) ........................31

*Lowe v. STME, LLC,*
  354 F. Supp. 3d 1311 (M.D. Fla. 2019) ..........................................................................31

*Lowery v. Texas A&M Univ. Sys.,*
  2024 WL 4614714 (5th Cir. Oct. 30, 2024)....................................................................15

* *Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992)...........................................................................................12, 14, 16

*Lust v. Miller,*
  4 F.2d 293 (D.C. 1925) ...................................................................................................24

*Madsen v. Boise State Univ.,*
  976 F.2d 1219 (9th Cir. 1992) ........................................................................................14

*McCann v. Brady,*
  909 F.3d 193 (7th Cir. 2018) ..........................................................................................18

*McCray v. Biden,*
  574 F. Supp. 3d 1 (D.D.C. 2021) ......................................................................................9

*Moose Lodge No. 107 v. Irvis,*
  407 U.S. 163 (1972)........................................................................................................14

*Morgan v. Fed. Home Loan Mortg. Corp.,*
  172 F. Supp. 2d 98 (D.D.C. 2001), *aff'd*, 328 F.3d 647 (D.C. Cir. 2003)..............................23

*Nanko Shipping, USA v. Alcoa, Inc.,*
  118 F. Supp. 3d 372 (D.D.C. 2015).................................................................................19

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
  538 U.S. 803 (2003)..........................................................................................................8

\* *Pac. Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013) .......................................................................................27, 28, 29

*Parr v. Woodmen of the World Life Ins. Co.*,
791 F.2d 888 (11th Cir. 1986) .................................................................................................30, 31

*Patterson v. McLean Credit Union*,
491 U.S. 164 (1989)................................................................................................................24

*Perkins Coie LLP v. U.S. Dep't of Just.*,
783 F. Supp. 3d 105 (D.D.C. 2025).........................................................................................33

*Personavera, LLC v. College of Healthcare Information Management Executives*,
2021 WL 1313108 (E.D. Pa. Apr. 8, 2021) ...........................................................................26

*Phelps v. Wichita Eagle-Beacon*,
886 F.2d 1262 (10th Cir. 1989) .........................................................................................30, 31

*Pittman v. Gen. Nutrition Corp.*,
515 F. Supp. 2d 721 (S.D. Tex. 2007) ....................................................................................31

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
489 F.3d 1279 (D.C. Cir. 2007).............................................................................................16

*Rangel v. Boehner*,
785 F.3d 19 (D.C. Cir. 2015).................................................................................................17

*Raso v. Lago*,
958 F. Supp. 686 (D. Mass. 1997), *aff'd*, 135 F.3d 11 (1st Cir. 1998)...................................22

*RDP Techs., Inc. v. Cambi AS*,
800 F. Supp. 2d 127 (D.D.C. 2011).........................................................................................25

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
487 U.S. 781 (1988)................................................................................................................33

*Rinck v. Ass'n of Rsrv. City Bankers*,
676 A.2d 12 (D.C. 1996) .........................................................................................................25

*Rivera v. Townsquare Media Broad., LLC*,
309 F. Supp. 3d 441 (W.D. Tex. 2018)....................................................................................30

*Roberts v. Progressive Preferred Ins. Co.*,
167 F.4th 955 (6th Cir. 2026) ..................................................................................................14

*Schaumburg v. Citizens for a Better Environment*,
444 U.S. 620 (1980)................................................................................................................33

*Scott v. J.P. Morgan Chase & Co.*,
296 F. Supp. 3d 98 (D.D.C. 2017) .............................................................................................4

*Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth.*,
390 F. Supp. 3d 72 (D.D.C. 2019), *aff'd*, 811 F. App'x 667 (D.C. Cir. 2020).........................7

*In re Sealed Case*,
80 F.4th 355 (D.C. Cir. 2023)................................................................................................17

*Seed v. EPA*,
100 F.4th 257 (D.C. Cir. 2024)................................................................................................13

*Shalit Barrett v. Atl. Monthly Grp. LLC*,
No. 22-cv-00049, slip op. (D.D.C. Sept. 9, 2024), ECF No. 38 .............................................20

*Sierra Club v. U.S. Dep't of Transp.*,
 125 F.4th 1170 (D.C. Cir. 2025)......................................................................................8

*Sup. Ct. of Va. v. Consumers Union of U.S.*,
 446 U.S. 719 (1980).......................................................................................................17

*Susman Godfrey LLP v. Exec. Off. of President*,
 789 F. Supp. 3d 15 (D.D.C. 2025).................................................................................33

*Texas v. United States*,
 523 U.S. 296 (1998)...................................................................................................9, 11

*Thakur v. Trump*,
 163 F.4th 1198 (9th Cir. 2025) ......................................................................................32

*Thomas v. Gandhi*,
 525 F. Supp. 2d 103 (D.D.C. 2007), *aff'd*, 377 F. App'x 25 (D.C. Cir. 2010)........................23

*United States v. Brewster*,
 408 U.S. 501 (1972)........................................................................................................17

*Warth v. Seldin*,
 422 U.S. 490 (1975).........................................................................................................9

*White v. Bank of Am., N.A.*,
 200 F. Supp. 3d 237 (D.D.C. 2016) ...............................................................................16

*Whitmore v. Arkansas*,
 495 U.S. 149 (1990)........................................................................................................16

* *Worth v. Jackson*,
 451 F.3d 854 (D.C. Cir. 2006) .................................................................9, 10, 11, 13, 15, 23

*Youngblood v. DeWeese*,
 352 F.3d 836 (3d Cir. 2003)............................................................................................17

*Zoob v. Jordan*,
 841 A.2d 761 (D.C. 2004) ..............................................................................................24

**Statutes**

42 U.S.C. § 1981............................................................................................... *passim*

**Other Authorities**

Cara McClellan, *Existing Together from the Beginning: Freedom to Contract and
 Black Mutual Aid*, 120 Nw. U. L. Rev. 97 (2025) .................................................................24

Compl., *Am. All. for Equal Rts. v. Founders First Cmty. Dev. Corp.*,
 No. 24-cv-327 (N.D. Tex. Apr. 16, 2024) .......................................................................12

Compl., *Am. All. for Equal Rts. v. Nat'l Minority Supplier Dev. Council*,
 No. 2:26-cv-2126 (D. Kan. Mar. 9, 2026) ......................................................................12

Compl., *Parents Defending Educ. v. Croton-Harmon Union Free Sch. Dist.*,
 No. 24-cv-04485 (S.D.N.Y. June 12, 2024) ...................................................................12

Compl., *Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*,
 No. 23-cv-01595 (S.D. Ohio May 11, 2023) ..................................................................12

Congressional Black Caucus, *About the CBC*, https://cbc.house.gov/about/ ................................4

Congressional Black Caucus Foundation, Inc., *Our Story*,
 https://www.cbcfinc.org/about/our-story/..................................................................3, 4

Congressional Black Caucus Foundation, Inc., *Scholarships*,
https://www.cbcfinc.org/programs/scholarships/ ...............................................................4, 5

Maine Community Foundation, *Scholarships Available Statewide*,
https://www.mainecf.org/find-a-scholarship/available-scholarships/available-
statewide/ ................................................................................................................................28

Roger Colinvaux, *Charitable Giving and Civil Rights:
A Defense of Private Remedial Action*, 135 Yale L.J. 549 (2025)............................................24

U.S. Census Bureau, *Hispanic or Latino, and Not Hispanic or Latino by Race –
2020*, https://data.census.gov/table/DECENNIALPL2020.P2?q=p2&g=010X
X00US$0400000..........................................................................................................................28

## Rules

Federal Rule of Civil Procedure 12(b)(1) ...........................................................................1, 7, 34

Federal Rule of Civil Procedure 12(b)(6) .........................................................................1, 3, 8, 34

## Treatises

Restatement (Second) of Contracts § 24 cmt. b (Am. Law Inst. 1981).......................................25

Restatement (Second) of Contracts § 24 illus. 2 (Am. Law Inst. 1981).....................................25

Restatement (Second) of Contracts § 71 cmt. c (Am. Law Inst. 1981).......................................25

1 Williston on Contracts § 4:13 (4th ed.)....................................................................................26

## Constitutional Provisions

U.S. Const. amend. I ............................................................................................3, 32, 33, 34

U.S. Const. art. I, § 6, cl. 1..........................................................................................2, 8, 16, 17, 18

## I.    INTRODUCTION

For decades, the Congressional Black Caucus Foundation, Inc. ("CBCF")—a nonprofit founded by the Congressional Black Caucus—has helped students overcome the barrier of college affordability through its Spouses Education Scholarship (the "Scholarship").  Established in 1988 in response to cuts in federal education funding, the Scholarship supports talented, motivated students pursuing higher education, thereby advancing CBCF's mission to develop leaders, inform policy, educate the public, and expand opportunity.

Plaintiffs ask this Court to stop that decades-old charitable program because, they contend, it violates Section 1981, a Reconstruction-era law that enshrines for "[a]ll persons within the jurisdiction of the United States" the "same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Plaintiffs do so not on their own behalf, but instead on behalf of three anonymous members: Students A, B, and 1. Plaintiffs claim the Scholarship is unlawful for two reasons: first, because it is purportedly limited to Black and African American students, and second, because it is allegedly available only to applicants who reside or study in a district represented by a Congressional Black Caucus ("CBC") member.  Both claims should be dismissed (1) under Rule 12(b)(1), because this Court lacks subject matter jurisdiction to hear them; and (2) under Rule 12(b)(6), because Plaintiffs have not plausibly alleged any violation of Section 1981.

(1)    Plaintiffs' suit fails at the threshold because this Court does not have subject matter jurisdiction to consider their claims.

*First*, Plaintiffs' speculation that CBCF will apply a race-based limitation when it awards the Scholarship at some future point does not identify a concrete injury that is ripe for judicial resolution now.  Plaintiffs' claim relies almost exclusively on materials that relate to prior

application cycles or that were removed from CBCF's website months before the Amended Complaint was filed. But the express eligibility criteria for the 2026 Scholarship do not include any race-based requirement—an intentional change that CBCF made this cycle to confirm that the Scholarship is open to qualified students of any race. This Court does not have subject matter jurisdiction to decide in the abstract whether CBCF intends to flout the 2026 requirements as written, or to opine on the lawfulness of past practices that did not apply to Plaintiffs.

*Second*, even if Plaintiffs' claim were concrete enough for this Court to consider, two of the three students on whose behalf Plaintiffs brought suit did not even apply for the 2026 Scholarship. Because this decision not to apply, and not any fictitious racial requirement, guarantees they will not be awarded the Scholarship, Plaintiffs have not identified any injury to these students from which Plaintiffs can derive standing. And Plaintiffs cannot fix this problem by challenging their purported ineligibility for the 2027 Scholarship; no such Scholarship has even been announced, and Plaintiffs are only guessing at what eligibility criteria would apply if it were.

*Finally*, Plaintiffs' claim concerning the purported requirement that applicants live or attend school in a CBC Member's district predicates liability on the CBC's alleged decision to exclude non-Black members. But the U.S. Constitution's Speech or Debate Clause prevents this Court from interfering with the CBC's membership decisions. Because those decisions are legislative acts, they cannot serve as a predicate for a justiciable claim.

(2)      Even if this Court had jurisdiction to consider the Amended Complaint, Plaintiffs also fail to state a claim under Section 1981.

*First*, Plaintiffs fail to plausibly allege the three elements of a Section 1981 claim: (i) the Scholarship has no racial requirement, so Plaintiffs cannot establish intentional discrimination; (ii) non-existent discrimination cannot be the but-for cause of any injuries; and (iii) the

2

Scholarship—a means of giving charitable donations—is not a contract that is subject to Section 1981.

*Second*, Plaintiffs' allegations based on the alleged member-district residency requirement also fail to plausibly assert a Section 1981 claim. Plaintiffs acknowledge that the alleged requirement does not constitute an express race-based restriction. And Plaintiffs' attempts to plead around that concession are insufficient: Living or attending school in a CBC member's district is not a "proxy" for race because thousands, if not millions, of non-Black students do, and Plaintiffs cannot rely on a theory of associational discrimination because it does not explain how Plaintiffs' members are being discriminated against based on *their* race, nor have Plaintiffs alleged that their members "associate" with their U.S. Representatives in any meaningful sense.

*Finally*, both claims fail for the additional reason that Plaintiffs' premature request for this Court's intervention in a CBCF charitable scholarship program—before CBCF has made any decisions about which students should receive an award—would violate the First Amendment by impermissibly chilling CBCF's constitutionally protected speech.

For all of these reasons, the Court should dismiss the Amended Complaint.

## II.    BACKGROUND

### A.    CBCF is a Nonprofit Dedicated to Developing Leaders Through Educational Scholarships

CBCF was established in 1976 as a nonprofit public policy research and educational institute affiliated with the CBC, a group of United States Senators and Representatives committed to "ensur[ing] that African Americans and other marginalized communities in the United States have the opportunity to achieve the American Dream."[1]    *See* Congressional Black Caucus

---

[1] This Court may consider material outside the pleadings to determine whether it has subject matter jurisdiction to decide Plaintiffs' claims. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). It can also consider materials from CBCF's website, as well as the Scholarship

Foundation, Inc., *Our Story*, https://www.cbcfinc.org/about/our-story/ (last visited July 16, 2026); Congressional Black Caucus, *About the CBC*, https://cbc.house.gov/about/ (last visited July 16, 2026); Amended Complaint ("Am. Compl.") ¶¶ 1, 11.  One of the primary ways CBCF accomplishes its mission of "developing leaders, informing policy and educating the public" is by awarding scholarships to students.  *See Our Story*, *supra* at 3–4; Am. Compl. ¶ 11.

In the 1980s, the federal government cut funding for education programs and scholarships, which disproportionately affected students of color.  *See* Congressional Black Caucus Foundation, Inc., *Scholarships*, https://www.cbcfinc.org/programs/scholarships/ (last visited July 16, 2026).  In response, the spouses of CBC members established CBCF's Spouses Education Scholarship.  *Id.*; Am. Compl. ¶ 15.  The Scholarship provides monetary support to students pursuing undergraduate, graduate, or doctoral degrees; advances CBCF's mission as an "educational institute"; and deepens its commitment to public policy, research, education, and leadership development.  *Our Story*, *supra* at 3–4; *Scholarships*, *supra* at 4; Am. Compl. ¶ 11.

In past years, CBCF listed "identify[ing] as Black or African American" as an eligibility requirement for the Scholarship.  Austin-Hillery Decl. ¶ 4.  It did not do so in 2026, however, because CBCF intended to make clear that the Scholarship is open to applicants of all races.  *Id.* ¶ 5.  The 2026 application thus describes the Scholarship as being for "academically talented and highly motivated full-time students"; it does not identify any race-based criterion as one of the "Candidate Requirements" to receive an award.  *Id.* Exhibit ("Ex.") 1, at 1.

---

application and its published requirements, when addressing Defendant's Rule 12(b)(6) motion because their authenticity is not disputed; the webpages, application, and requirements were referenced in the Amended Complaint, *see, e.g.*, Am. Compl. ¶¶ 11, 14, 16, 20, 27, 30, 32–33, 36–37, 44, 46; and the content is integral to Plaintiffs' claims.  *See Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 105 (D.D.C. 2017); *see also Haymon v. District of Columbia*, 610 F. Supp. 3d 101, 108 (D.D.C. 2022).

**CBC Spouses Education Scholarship**
**The CBC Spouses Education Scholarship** awards academically talented and highly motivated full-time students pursuing an undergraduate, graduate or doctoral/PhD degrees in a variety of fields.

**Candidate Requirements**
• Be a U.S. citizen or legal permanent resident
• Reside or attend an academic institution in a CBC Member's District
• Attend (or will attend) an undergraduate, graduate or doctoral degree program full-time at an accredited college or university (graduating high school seniors are eligible to apply)
• Minimum 2.5 GPA on 4.0 scale
• Exhibit leadership and be active in community

**Application Materials**
• Complete 2-part online application (must be submitted by March 27, 2026,11:59 pm ET)
• Video Response: Personal Statement – *not to exceed 3 minutes*
• 1 Letter of Recommendation
• Transcript(s) – *direct upload required (unofficial transcripts accepted)*
• Resume listing work experience, extracurricular activities, honors, community service and special skills

Although, as Plaintiffs allege, the Scholarship application asks that applicants indicate their race or ethnicity, this is not required. "Not Applicable" is an available and acceptable answer. Austin-Hillery Decl. Ex. 2, at 1.



CBCF's website likewise reaffirms that "CBCF is a non-partisan 501(c)(3) equal opportunity organization that provides scholarships, internships, and fellowships to eligible applicants." Austin-Hillery Decl. ¶ 3; *Scholarships*, *supra* at 4.

The Amended Complaint contains a screenshot, with no source citation, of a Frequently Asked Questions ("FAQ") page that asks, "Who is eligible to apply for CBC Spouses Education Scholarship?" and features the response, "African American and Black graduating high school seniors" as well as "scholars pursuing undergraduate, graduate or doctoral degrees in a variety of fields." Am. Compl. ¶¶ 2, 16(B). That language was intentionally removed from CBCF's website

5

on January 8, 2026—three days after the Scholarship application cycle opened and nearly three months before Plaintiffs filed this lawsuit—to be consistent with the 2026 Scholarship's eligibility requirements, which do not mention race. Austin-Hillery Decl. ¶ 10. Similarly, the Amended Complaint references a brochure from some indeterminate time in the past that says the Scholarship is available for "qualified, African American or black students." Am. Compl. ¶ 16(C). But since Plaintiffs only challenge the 2026 and later application cycles, the materials for *these* selection processes—and not those of past cycles—govern.

CBCF is still considering the applications it received for the 2026 Scholarship and has not yet made award decisions. Austin-Hillery Decl. ¶ 7. Consistent with the published eligibility requirements, applicants of all races, ethnicities, and backgrounds will be considered for the Scholarship, and no applicant will be assessed on the basis of their race. *Id.* ¶ 11.

**B.    Plaintiffs Sued CBCF For Purportedly Excluding Anonymous Members from Scholarships**

On April 2, 2026, the American Alliance for Equal Rights ("AAER") filed this lawsuit against CBCF, and on June 3, 2026, AAER filed an Amended Complaint that added Defending Education ("DE") as a plaintiff. Plaintiffs bring two claims. In Count One, Plaintiffs claim that CBCF violated Section 1981 by allegedly "barring applicants who are not [B]lack." Am. Compl. ¶ 61. In Count Two, Plaintiffs claim that CBCF violated Section 1981 by allegedly "barring applicants unless their representative is a member of the CBC." *Id.* ¶ 67.

Plaintiffs rely on purported injury to three anonymous members—Students A and B of AAER, and Student 1 of DE—to establish their standing to sue.

The Amended Complaint alleges that the first anonymous student, Student A, is an Asian student who lives in and will attend college in districts represented by a CBC member. Am. Compl. ¶ 32. Student A allegedly applied for the Scholarship in March 2026 but does not believe

6

he will be considered because he is not Black. *Id.* ¶ 34. His alleged application remains pending, along with those of all other applicants to the 2026 Scholarship. Austin-Hillery Decl. ¶ 7.

Student B did not apply for the Scholarship. Am. Compl. ¶ 40. Plaintiffs allege that he is a Hispanic student who does not live or attend school in a district represented by a CBC member. *Id.* ¶ 36. He allegedly filled out part of an application but did not submit it because he believed it would be "futile" due to his race and congressional district. *Id.* ¶¶ 39–40.

Student 1 is a white student living in a jurisdiction represented by a CBC member. Am. Compl. ¶¶ 44–45. Plaintiffs do not allege that he applied for the 2026 Scholarship or had any plans to do so, though they contend he would be "ready and able" to apply in the 2027 application cycle if CBCF were to "stop discriminating." *Id.* ¶¶ 44, 45, 47.

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth.*, 390 F. Supp. 3d 72, 78 (D.D.C. 2019), *aff'd*, 811 F. App'x 667 (D.C. Cir. 2020) (internal quotation marks omitted). To defeat dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). Since factual Rule 12(b)(1) challenges test the actual existence of jurisdiction, a court "may consider . . . the complaint supplemented by undisputed facts plus the court's resolution of disputed facts" to determine whether it has jurisdiction to hear the claim.[2] *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

---

[2] This contrasts with facial 12(b)(1) challenges, which test the legal sufficiency of a complaint's jurisdictional contentions and for which a court must accept all well-pleaded allegations as true. *Doe v. Off. of Pers. Mgmt.*, 813 F. Supp. 3d 156, 168 (D.D.C. 2025).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A court need not accept as true legal conclusions set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

### A.    This Court Lacks Subject Matter Jurisdiction

An Article III court lacks subject matter jurisdiction to adjudicate a dispute if the case does not present a concrete injury that is fit for judicial resolution. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *Exxon Mobil Corp. v. Fed. Energy Regul. Comm'n*, 501 F.3d 204, 207 (D.C. Cir. 2007). Whether framed as a question of ripeness or standing, Plaintiffs' fears of future discrimination do not meet this threshold requirement, and Count One of the Amended Complaint must be dismissed.

The Court also lacks subject matter jurisdiction to adjudicate Plaintiffs' contention that their members are harmed by the CBC's decisions about who can be a member of its legislative caucus. The Speech or Debate Clause prohibits this Court from interfering with such quintessential legislative acts, so Count Two, which is based on the Scholarship's alleged member-district requirement, should be dismissed as well.

### 1.    Plaintiffs' claim that CBCF will apply a race-based eligibility criterion is not ripe (Count One)

To prevent courts "from entangling themselves in abstract disagreements," *Sierra Club v. U.S. Dep't of Transp.*, 125 F.4th 1170, 1179 (D.C. Cir. 2025) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003)), Plaintiffs must establish that the harm they assert

"has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). Making this showing involves "a two-part analysis, evaluating [1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *CTIA–The Wireless Ass'n v. FCC*, 530 F.3d 984, 987 (D.C. Cir. 2008) (internal quotation marks omitted). Plaintiffs' claim fails on both fronts. This Court's intervention is not warranted because Plaintiffs merely suspect that CBCF will exclude non-Black applicants when it awards the 2026 Scholarship, even though the express written eligibility requirements do not mention race. And Plaintiffs will not suffer hardship if the Court makes them wait to challenge CBCF's evaluation process until the Scholarship has been awarded.

### a)     Plaintiffs' claim that CBCF will discriminate is anticipatory and unfit for judicial decision

CBCF did not include any race-based criteria among the 2026 Scholarship's eligibility requirements, and CBCF does not intend to apply race-based criteria when it reviews the applications it received. Austin-Hillery Decl. ¶¶ 5, 8, 11; *see also Herbert*, 974 F.2d at 197 (permitting consideration of evidence outside the complaint for purposes of factual 12(b)(1) challenge). Plaintiffs' suspicion that CBCF will nonetheless discriminate against their non-Black members when selecting awardees therefore is not ripe for adjudication because "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). Claims in this posture "must be dismissed because they fail to identify a non-speculative dispute that is ripe for adjudication." *McCray v. Biden*, 574 F. Supp. 3d 1, 12 (D.D.C. 2021).

The D.C. Circuit reached this exact conclusion in an analogous case, *Worth v. Jackson*, 451 F.3d 854, 860 (D.C. Cir. 2006). The plaintiff in *Worth* was a white, male employee who complained that the U.S. Department of Housing and Urban Development ("HUD") would

discriminate against him based on sex and race if he applied for a promotion. *Id.* at 856. He based this contention, in large part, on a written affirmative action plan setting "racial and gender employment targets" that was no longer in place when the court examined his complaint. *Id.* The D.C. Circuit explained that the employee's claims were "not yet ready for judicial airing" and instructed the district court to dismiss the claim. *Id.* at 862. Although the employee insisted, based on past practice, that HUD had "adopted and maintained a system of race preferences that disadvantage[d] [him] on their face," the court could not "assess a facial challenge to an unwritten policy that by definition has no face." *Id.*

Here, as in *Worth*, Plaintiffs rely almost entirely on the Scholarship's eligibility criteria in *prior* application cycles to allege that CBCF will discriminate against their members in this cycle. But CBCF intentionally did not include race among the eligibility criteria for the 2026 application cycle because it will award the Scholarship without regard to any applicant's race. Austin-Hillery Decl. ¶¶ 5, 8, 11. Indeed, applicants did not even need to disclose their race to apply for the 2026 Scholarship. *Id.* ¶ 9.

Plaintiffs nonetheless seek this Court's intervention, because they speculate that CBCF will not apply its eligibility requirements as written. In support of that assertion, they cite to an FAQ which they allege states that the Scholarship is open only to "African American[s] and Black[s]." Am. Compl. ¶ 16(B) (alterations in original). Plaintiffs omit from their Amended Complaint, however, that CBCF removed that FAQ from its website on January 8, 2026—months before this lawsuit was filed. Austin-Hillery Decl. ¶ 10. As for a purported brochure to which Plaintiffs point, they fail to allege its date of publication, Am. Compl. ¶ 16(C), and make no allegation that it reflects the current application cycle's criteria (it does not).

Plaintiffs also cite language on the CBCF website noting that CBCF awards "scholarships

10

to academically talented and highly motivated African-American or Black students."  Am. Compl. ¶ 16(A).  But this language does not preclude the possibility that *other* demographic groups are eligible to receive those same awards; indeed, the express, written eligibility requirements and the equal opportunity statement make clear that they are.  *Supra* Part II(A).  Though CBCF has a long history of supporting the African American community (in pursuit of the same goals that Congress codified after the Civil War in Section 1981), the reality today is that there are no race-based requirements for the 2026 Scholarship.  Plaintiffs' suspicion that the Scholarship's eligibility requirements will not mean what they say does not create a dispute that is ripe for this Court to resolve.

**b)      Plaintiffs will not suffer hardship if the Court withholds consideration of their anticipatory claims**

*Second*, Plaintiffs will not suffer hardship if the Court withholds consideration of this dispute until the Scholarship has been awarded and "a more concrete controversy arises."  *Texas*, 523 U.S. at 301 (internal quotation marks omitted).  If CBCF does not apply its eligibility criteria as written (it will), Plaintiffs "remain[] free to challenge" any purported racial preferences applied. *Worth*, 451 F.3d at 862.  Plaintiffs "just need[] to wait" for those preferences to "actually affect" them.  *Id.*  This brief delay will permit the Court to consider concrete evidence about the intent of CBCF's decision makers (by examining the decisions that were actually made) instead of guessing in advance about what CBCF might or might not be planning to do, as the Amended Complaint improperly demands.  *Id.*

Moreover, Plaintiffs have identified only one member between their two organizations who allegedly applied to the 2026 Scholarship, and who therefore would be made to wait should the Court deem this dispute unripe.  Although Plaintiffs plead that their other members "are ready and able to apply for the scholarship at the next open opportunity," Am. Compl. ¶¶ 31, 41, 43, 47, such

11

an opportunity only would arise (if at all) after decisions on the 2026 Scholarship have been made and a future hypothetical 2027 cycle is opened.  In any event, Plaintiffs' other litigation efforts cast suspicion on their claim that all of their members (whose number and identities are unknown) will even be affected by the outcome of this case; they have repeatedly represented the interests of members who, it would appear, do not meet the Scholarship's eligibility criteria in the first place.[3]

### 2.    For the same reasons, Plaintiffs lack standing to challenge the alleged racial requirement (Count One)

To establish that subject matter jurisdiction exists through associational standing, as Plaintiffs endeavor to do, each organization must show that their "members would otherwise have standing to sue in their own right."  *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 15 (D.D.C. 2001); *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1225 (D.C. Cir. 2024).  This requires that at least one identified member of each organization demonstrate an injury that is "actual or imminent, not conjectural or hypothetical." *Arpaio*, 797 F.3d at 19 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  Plaintiffs must also show that it is "likely, as opposed to merely speculative," that the purported injury "will be redressed by a favorable

---

[3] *See, e.g.*, *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 770 (11th Cir. 2024) ("In this case, the Alliance represents several members . . . all of whom operate their own businesses."); Compl. ¶ 29, *Am. All. for Equal Rts. v. Nat'l Minority Supplier Dev. Council*, No. 2:26-cv-2126 (D. Kan. Mar. 9, 2026) (alleging that its anonymous members were "business own-ers [who] authorized the Alliance to vindicate their rights in this suit"); Compl. ¶ 47, *Am. All. for Equal Rts. v. Founders First Cmty. Dev. Corp.*, No. 24-cv-327 (N.D. Tex. Apr. 16, 2024) (repre-senting the interests of an anonymous member who "owns a for-profit, service-based business that works largely with other businesses" and who employs between "two to twenty employees"); Am. Compl. ¶ 9 (identifying DE's members as "students, parents, and others who are concerned about the state of education in America"); Compl. ¶ 7, *Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, No. 23-cv-01595 (S.D. Ohio May 11, 2023) (identifying members as "parents with children in" the Olentangy Local School District); Compl. ¶ 13, *Parents Defending Educ. v. Croton-Harmon Union Free Sch. Dist.*, No. 24-cv-04485 (S.D.N.Y. June 12, 2024) (confirming that the organization's "members include parents who live in the Croton-Harmon Union Free School District").

decision" of this Court. *Arpaio*, 797 F.3d at 19 (internal quotation marks omitted). Plaintiffs cannot satisfy either requirement.

*First*, for the reasons explained above, any injury to Plaintiffs' members is speculative. *Brooks v. Air Line Pilots Ass'n, Int'l*, 630 F. Supp. 2d 52, 55 n.2 (D.D.C. 2009) ("On the facts of this case standing and ripeness boil down to the same question" (citation & quotation marks omitted)). Unlike plaintiffs who "face[] almost-certain application of race-conscious statutes," Plaintiffs here "may never have to compete at a disadvantage for" the Scholarship. *Worth*, 451 F.3d at 860. Therefore, the "possibility" that Plaintiffs' members may experience "a prospective injury" is "far too remote and attenuated to establish a case or controversy under Article III." *Id.* (quoting *Branton v. FCC*, 993 F.2d 906, 909 (D.C. Cir. 1993)); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (confirming that a "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending").

*Second*, the Amended Complaint relies almost exclusively on eligibility criteria for past years, without acknowledging that those criteria do not apply to the 2026 Scholarship. The Court does not have jurisdiction to issue an advisory opinion about the lawfulness of those criteria, which Plaintiffs do not allege were ever applied to their members. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). And it is otherwise unclear what order the Court could issue to redress the speculative harm that Plaintiffs allege: CBCF has averred that it will not make decisions about the 2026 Scholarship awards based on race (and was never planning to) and issued eligibility criteria that confirmed this prior to this litigation. Austin-Hillery Decl. ¶¶ 5, 8, 11. The Court's further intervention at this stage of the process would be gratuitous. *See Seed v. EPA*, 100 F.4th 257, 263–64 (D.C. Cir. 2024) (holding that injunctive relief was unavailable where there was no

13

evidence of any present harm left to enjoin).

> **3.    At the very least, Plaintiffs lack standing to sue on behalf of the two students who never applied for the Scholarship (Count One)**

Even if the Court concludes that Plaintiffs can appropriately challenge the race-based bar that they speculate CBCF might implement against Student A, Plaintiffs still lack standing to bring that claim on behalf of Students B and 1. To establish standing to challenge an allegedly discriminatory program, an individual must apply to that program. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–68, 171 (1972). This threshold requirement is necessary for a plaintiff to show he or she has suffered an injury in fact. *Id.* It also "serves the salutary objective of ensuring that only those individuals who cannot resolve their disputes without judicial intervention wind up in court." *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1221 (9th Cir. 1992).

Here, Plaintiffs concede that Student B "did not . . . 'submit'" an application for the 2026 Scholarship. Am. Compl. ¶ 40. Student 1 is not even alleged to have *considered* applying to the 2026 award and, instead, is only potentially interested in applying for future scholarships that have not ever been announced. *See id.* ¶¶ 47–48, 52. Therefore, Students B and 1 cannot identify any injury arising out of this year's Scholarship because they are categorically ineligible to receive it—not because of their race, but because they never submitted an application. *See Lujan*, 504 U.S. at 560–61; *Arpaio*, 797 F.3d at 19; *Albuquerque Indian Rts. v. Lujan*, 930 F.2d 49, 57 (D.C. Cir. 1991) (holding that an association lacked standing when its members "disqualified themselves by not actually applying for the vacant positions"); *Roberts v. Progressive Preferred Ins. Co.*, 167 F.4th 955, 962 (6th Cir. 2026) (holding that because plaintiff Roberts "closed the grant application without submitting it," "[defendants] did not cause Roberts's injuries. Roberts caused them."). Since Student 1 also "lives in a jurisdiction that is represented by a Congressional Black Caucus member," Am. Compl. ¶ 45, he has not suffered an injury caused by CBCF under either of

14

Plaintiffs' theories, and DE should be dismissed from the case. *Arpaio*, 797 F.3d at 19.

Student B alleges he did not submit his completed paperwork because "he realized his application was futile." Am. Compl. ¶ 40. But the futility exception—which permits a plaintiff to establish standing when application of a discriminatory policy was inevitable—does not apply here. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977); *Carney v. Adams*, 592 U.S. 53, 66 (2020). The relevant eligibility criteria did not even mention race. *See supra* Part II(A). Student B's failure to apply is, at best, the result of a misapprehension about those criteria. This purported injury is too speculative to satisfy Article III. *Teamsters*, 431 U.S. at 366 (finding standing only when effort would have been truly "futile" or "vain"); *Worth*, 451 F.3d at 860 (requiring "a high degree of certainty" that a race-based bar will be applied and explaining that, "in a facial challenge to a *de facto* policy, a court attempting to establish its jurisdiction has no way of satisfying itself that the alleged injury will ever actually occur"); *see also Lowery v. Texas A&M Univ. Sys.*, 2024 WL 4614714, at *1 (5th Cir. Oct. 30, 2024) (white male who did not apply to university position subject to alleged hiring preferences for women and minority groups lacked standing because there was "little evidence that submitting a job application would [have] be[en] a futile gesture").

4. **Plaintiffs lack standing to challenge an application cycle that has not been announced (Counts One and Two)**

Plaintiffs also attempt to manufacture standing by alleging that all three Students are "ready and able to apply" in the 2027 application cycle. Am. Compl. ¶¶ 35, 41, 47. They further contend that Student 1—whom Plaintiffs fail to allege even thought about applying in this year's cycle— "cannot apply to the CBC Foundation's 2027 Spouses Education Scholarship because of the scholarship's racial requirements." *Id.* ¶ 49. But the 2027 cycle does not yet exist and no criteria for the Scholarship have been announced. Plaintiffs cannot allege an injury to any of their

15

members by speculating about what might or might not happen a year from now. Such "some day" injuries "do not support a finding of the 'actual or imminent' injury" that the Supreme Court requires. *Lujan*, 504 U.S. at 564; *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1294 (D.C. Cir. 2007). In any event, the only reasonable inference about the 2027 Scholarship's eligibility requirements—assuming such a scholarship is announced—would be that they, like the 2026 Scholarship's eligibility requirements, will not include any race-based criteria. *See White v. Bank of Am., N.A.*, 200 F. Supp. 3d 237, 244–45 (D.D.C. 2016) (holding plaintiff's allegations did not support a claim for injunctive relief where the allegedly discriminatory policy was no longer in effect, plaintiff failed to allege defendant was considering reinstituting the policy, and there was no evidence the policy was likely to be reinstated).

5. **The Speech or Debate Clause divests the Court of subject matter jurisdiction (Count Two)**

The Court also lacks subject matter jurisdiction to opine on the legality of CBCF's alleged member-district requirement. Count Two is premised on the allegation that the CBC's "membership is racially exclusive" and "open only to Senators and Representatives who are black." Am. Compl. ¶¶ 21, 67. In other words, Plaintiffs allege that the CBC discriminates against non-Black members of Congress and that this harm should be imputed to Plaintiffs' members, too, because they live or attend school in non-CBC member districts. This argument fails, as explained below, because Plaintiffs' second-hand race discrimination allegations do not plausibly state a claim under Section 1981. But it fails for another reason that goes to the heart of the U.S. Constitution's separation of powers: By asking the Court to find intentional racial discrimination based, at least in part, on U.S. Representatives' choices about who to caucus with, Plaintiffs ask the judiciary to impermissibly intrude on the prerogatives of Congress. This violates the Speech

16

or Debate Clause, which provides that Senators and Representatives "shall not be questioned in any other Place" "for any Speech or Debate in either House." U.S. Const. art. I, § 6, cl. 1.

The purpose of the Speech or Debate Clause is "to preserve the independence and thereby the integrity of the legislative process." *Clyde v. Walker*, 619 F. Supp. 3d 193, 197–98 (D.D.C. 2022), *aff'd*, 2023 WL 6939987 (D.C. Cir. Oct. 20, 2023) (quoting *United States v. Brewster*, 408 U.S. 501, 524 (1972), and *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975)). "The Supreme Court has consistently read the Speech or Debate Clause 'broadly' to achieve [these] purposes." *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) (quoting *Eastland*, 421 U.S. at 501). Consistent with this broad understanding, the Clause divests courts of subject matter jurisdiction where the "actions upon which [plaintiffs seek] to predicate liability [a]re legislative acts." *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (internal quotation marks omitted); *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006). Decisions about caucus membership are quintessential legislative acts protected by the Speech or Debate Clause. *See, e.g.*, *In re Sealed Case*, 80 F.4th 355, 371 (D.C. Cir. 2023) (affirming "that communications with Members and staff about legislation, votes, committee assignments, and caucus affairs" are legislative acts protected under the Clause). This is because caucuses are "inextricably bound up in the legislative process," given their key role in "direct[ing] legislative strategy." *Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 365–66 (6th Cir. 2022).[4] "Control

---

[4] Although *Kent* involved a state legislative caucus, "[t]he Supreme Court now 'generally . . . equate[s]' the scope of state legislators' statutory immunity under § 1983 with federal legislators' constitutional immunity under the Speech or Debate Clause and uses the relevant case law inter-changeably." *Kent*, 33 F.4th at 364 (quoting *Sup. Ct. of Va. v. Consumers Union of U.S.*, 446 U.S. 719, 733 (1980)). And "the scope of state legislators' immunity is 'coterminous' with the absolute immunity afforded to members of Congress under the Speech or Debate Clause, Art. I, § 6, of the United States Constitution." *Youngblood v. DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003), as amended (Feb. 11, 2004).

17

of [c]aucus membership directly affects [legislative] functions," because caucus makeup influences the "deliberative and communicative processes" of the group. *Id.* at 366 (citation omitted); *see also id.* (collecting cases holding that "legislative immunity extends to" "caucus membership"); *McCann v. Brady*, 909 F.3d 193, 197 (7th Cir. 2018) ("The question here is whether [] decisions about who is included within the Minority or Republican Caucus, and how to allocate resources to those people, are protected by the [legislative] privilege. We conclude that they are.").

Accordingly, the CBC's decisions as to its membership—including the alleged decision to exclude non-Black members—are legislative acts the Speech or Debate Clause precludes Article III courts from second-guessing. Those legislative acts are subject to the rules of Congress, and any concerns about those acts are the sole province of Congress to address. Because Plaintiffs' Amended Complaint seeks to predicate liability upon those legislative acts, Am. Compl. ¶¶ 21, 67, the Court lacks subject matter jurisdiction over Count Two. *McMillan*, 412 U.S. at 318.

**B.    Plaintiffs Have Not Plausibly Alleged a Violation of Section 1981**

Even if the Court concludes it has subject matter jurisdiction, the Amended Complaint should be dismissed because Plaintiffs have not plausibly alleged any violation of Section 1981. Count One fails to plausibly allege each of the three elements of a Section 1981 claim: Plaintiffs cannot establish intentional discrimination, but-for causation, or the existence of a contract because race is not an eligibility criterion for the Scholarship and a discretionary charitable award is not a bargained-for exchange. Count Two also fails, because Plaintiffs concede that the member-district requirement is race neutral, and Plaintiffs' efforts to plead around that concession—through theories of proxy and associational discrimination—are insufficient to plausibly allege intentional discrimination under Section 1981.

18

1.      **Plaintiffs fail to plausibly allege each element of a Section 1981 claim (Count One)**

Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To state a claim under the statute, a plaintiff must sufficiently allege (1) intentional discrimination on the basis of race, *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982); (2) that race was the but-for cause of the plaintiff's loss of a legally protected right, *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 333 (2020); and (3) the existence of a contractual relationship that brings the challenged conduct within Section 1981's reach, *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475–76 (2006). The Amended Complaint fails to satisfy any of these three elements.

a)      **Plaintiffs fail to plausibly allege intentional discrimination because the Scholarship has no racial requirement**

Plaintiffs have not plausibly alleged the most basic element of their case: intentional discrimination. Section 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors*, 458 U.S. at 391. Therefore, Plaintiffs "must allege some facts that demonstrate that race [will be] the reason for [the] defendant's actions"—*i.e.*, that CBCF intends to evaluate Plaintiffs' members' applications less favorably than those of Black or African American competitors. *Nanko Shipping, USA v. Alcoa, Inc.*, 118 F. Supp. 3d 372, 377 (D.D.C. 2015) (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990)). Because race is not an eligibility criterion for the 2026 award, and CBCF has made clear its intent that the Scholarship be open to all, Plaintiffs cannot make this required showing.

The Court does not need to "accept as true the complaint's factual allegations" if "they contradict exhibits to the complaint or matters subject to judicial notice," including documents that are "referred to in the complaint and are integral to" the plaintiff's claims. *Kaempe v. Myers*, 367

19

F.3d 958, 963, 965 (D.C. Cir. 2004). Incorporation by reference, in this way, can "amplify pleadings [even] where the document is not attached by the plaintiff." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).[5] Here, as discussed above, the very documents on which Plaintiffs rely to demonstrate the existence of a racial bar contradict their claims. *See supra* Part IV(A)(1)(a). To start, the Scholarship eligibility requirements themselves, which the Amended Complaint repeatedly references, *see* Am. Compl. ¶¶ 32–33, 36–37, 44, 46, confirm that students of all races can apply for, compete for, and be awarded the Scholarship. *See* Austin-Hillery Decl. ¶ 8; *id.* Ex. 1, at 1. The published 2026 Scholarship "Candidate Requirements" included, among other things, that the applicant be a U.S. citizen or legal permanent resident, have a minimum 2.5 grade point average on a 4.0 scale, and exhibit leadership and be active in their community. *Id.* But race was not once listed—or even referenced—as a consideration or requirement to receive the award. *Id.*; *see also id.* ¶¶ 5, 8, 11. Indeed, an applicant need not disclose their race to apply for the Scholarship. *Id.* ¶ 9; *id.* Ex. 2, at 1. And the candidate requirements emphasized that the competition is open to *any* "academically talented and highly motivated full-time student[] pursuing an undergraduate, graduate or doctoral/PhD degrees." *Id.* Ex. 1, at 1.

Plaintiffs also place great weight on an FAQ Page, which they allege states that the Scholarship is open only to "African American[s] and Black[s]." Am. Compl. ¶ 16(B) (alterations in original). But Plaintiffs do not allege that this FAQ governs eligibility for the 2026 Scholarship cycle. Nor can they. A review of CBCF's website (which is incorporated into the Amended

---

[5] *See also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Shalit Barrett v. Atl. Monthly Grp. LLC*, No. 22-cv-00049, slip op. at 13–14 (D.D.C. Sept. 9, 2024), ECF No. 38 (incorporating by reference an email chain the plaintiff had "paraphrased . . . in her complaint").

Complaint, *see supra* at 3–4 n.1) confirms the page was taken down.  *See supra* Part IV(A)(1)(a).

In the face of the incorporated material demonstrating no racial requirement, Plaintiffs' other allegations are insufficient to plausibly state a claim that they are being subjected to intentional discrimination in the 2026 application cycle.  *See, e.g.*, *Griffin Indus.*, 496 F.3d at 1206 (ordering dismissal of claims where incorporated materials "contradict[ed] the general and conclusory allegations of the pleading").  Plaintiffs identify a brochure that they contend listed race as an eligibility requirement, but they fail to allege when it was published or that it applies in 2026.  Am. Compl. ¶ 16(C).  An undated publication cannot plausibly establish a claim for present discrimination—especially when an "obvious alternative explanation" (that the document is outdated) accounts for it.  *Iqbal*, 556 U.S. at 682.  The same is true for Plaintiffs' allegations about the race of prior winners, Am. Compl. ¶ 19; Plaintiffs' claims about the past fail to account for the public materials demonstrating that *this year's* Scholarship is not racially restricted.  Plaintiffs' citation of undated, past comments from CBC members, *id.* ¶ 17, similarly fails to support their claim of discrimination for the 2026 cycle.  In any event, CBCF is a legally distinct entity from the CBC, and Plaintiffs do not allege that the quoted Members of Congress have any decision-making authority over which students get the Scholarship.  *Contra, e.g.*, *id.* ¶ 61.

Finally, Plaintiffs identify language on CBCF's website noting that the Foundation awards "scholarships to academically talented and highly motivated African-American or Black students." Am. Compl. ¶ 16(A).  But, as discussed above, *see supra* Part IV(A)(1)(a), this language is not exclusionary.  That CBCF's website acknowledges the Foundation's history of working to end discrimination against Black Americans does not mean students of all races cannot apply and compete for the Scholarship, as the express eligibility requirements permit.  *See, e.g.*, *Bradley v. Gannett Co.*, 2025 WL 2533504, at *5–6 (E.D. Va. Sept. 3, 2025) (dismissing Section 1981 claim

21

where "diversity and inclusion [policy] existed, but d[id] not plausibly support Plaintiffs' allegations regarding an affirmative policy of reverse discrimination"); *Raso v. Lago*, 958 F. Supp. 686, 689 (D. Mass. 1997), *aff'd*, 135 F.3d 11 (1st Cir. 1998) (concluding a defendant housing development that targeted advertising to minority applicants did not unlawfully "consider[] . . . race" because the criteria it ultimately used to select tenants were race neutral).

Because the incorporated application materials directly contradict any allegation that race is an eligibility criterion for the 2026 Scholarship, and because Plaintiffs' contrary contention rests almost entirely on stale, superseded evidence, the Amended Complaint fails to plausibly allege intentional discrimination.

> **b)      Plaintiffs' anonymous members fail to plausibly allege but-for causation**

Plaintiffs also have not plausibly alleged that "but for race, [they] would not have suffered the loss of a legally protected right." *Comcast*, 589 U.S. at 341; *see also Adetoro v. King Abdullah Acad.*, 585 F. Supp. 3d 78, 83 (D.D.C. 2020). To satisfy this element, it is not enough for a Section 1981 plaintiff to allege that race played "some role" in the defendant's decision making. *Comcast*, 589 U.S. at 331, 341. Where an independent, race-neutral ground would have produced the same result, race is not the but-for cause of the injury, and any related Section 1981 claim fails. *Adetoro*, 585 F. Supp. 3d at 85; *see also Comcast*, 589 U.S. at 333 (noting that a plaintiff's burden on but-for causation "remains constant" "as a lawsuit progresses from filing to judgment"); *Iqbal*, 556 U.S. at 678.

Here, as explained above, the documents incorporated into the Amended Complaint show the 2026 Scholarship has no race-based criterion. *See supra* Part IV(B)(1)(a); *contra* Am. Compl. ¶ 34(C). Plaintiffs therefore fail to plausibly allege that race is a but-for cause of their members' treatment: CBCF will consider many criteria when deciding who should receive a 2026

22

Scholarship, but race is not one.

In addition, the fact that Students B and 1 never applied to the 2026 Scholarship makes it impossible for those students to show that CBCF would—or even could—have considered them "but for" their race. *See supra* Part II(B). Courts routinely conclude that Section 1981 complaints filed by would-be applicants fail, because a person who never applies generally cannot show that race, rather than their failure to apply, caused the denial of the opportunity. *See De La Fuente v. DNC Servs. Corp.*, 2019 WL 1778948, at *5 (D.D.C. Apr. 23, 2019) (granting motion to dismiss Section 1981 claim when plaintiff failed to adequately allege a contractual relationship or "that he sought a contractual relationship that would have entitled him to th[e] benefits"); *Correll v. Amazon.com, Inc.*, 2023 WL 6131080, at *3 (S.D. Cal. Sept. 19, 2023) (granting motion to dismiss Section 1981 claim when plaintiff's allegations showed he "voluntarily stopped engaging Amazon to enter into a contract"); *Thomas v. Gandhi*, 525 F. Supp. 2d 103, 108 (D.D.C. 2007) ("[B]ecause [plaintiff] did not apply for the . . . positions, he cannot claim discrimination in his non-selection."), *aff'd*, 377 F. App'x 25 (D.C. Cir. 2010); *Morgan v. Fed. Home Loan Mortg. Corp.*, 172 F. Supp. 2d 98, 112 (D.D.C. 2001) ("Without having applied, plaintiff cannot establish a prima facie case of discriminatory nonselection."), *aff'd*, 328 F.3d 647 (D.C. Cir. 2003).

Plaintiffs' attempt to invoke the futility exception for Student B, Am. Compl. ¶ 40, cannot salvage their claim. That exception requires a plaintiff to allege that "[a] consistently enforced discriminatory policy" would have made applying a "vain and useless act." *Teamsters*, 431 U.S. at 365, 368. Since the Scholarship eligibility criteria make clear there is no such discriminatory policy in place, Plaintiffs cannot plausibly show "with a[ny] high degree of certainty" that a race-based bar is being applied. *Worth*, 451 F.3d at 860. Plaintiffs thus have not plausibly alleged that race—rather than their members' own choice not to submit a completed application—is the but-

23

for cause of any lost opportunity.

      **c)**      **Plaintiffs fail to plausibly allege that the scholarship is a contract**

Finally, Plaintiffs have not alleged the existence of a contractual relationship sufficient to bring the Scholarship within Section 1981's reach. Section 1981 was enacted in the Reconstruction Era to guarantee newly emancipated citizens equal access to the commercial marketplace, such as the opportunity to purchase land, execute employment contracts, or enter into retail transactions. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 175–77 (1989). It was not intended to regulate charitable endeavors.[6] Instead, Section 1981 requires a plaintiff to identify a concrete commercial or contractual relationship under which the plaintiff has enforceable rights. *See Domino's Pizza*, 546 U.S. at 474–76.

The Scholarship creates no such relationship. Under District of Columbia law, "a mere promise to make a gift is unenforceable." *Zoob v. Jordan*, 841 A.2d 761, 765 (D.C. 2004). Because the intended recipient provides nothing in exchange for the donor's promise, there is no bargained-for consideration and no mutual obligation that the law will enforce. *See Haney v. Marriott Int'l, Inc.*, 2007 WL 2936087, at *9 (D.D.C. Oct. 9, 2007). Until the gift is completed by delivery and acceptance, the donor retains the absolute power to revoke, and the would-be donee acquires no legal or equitable interest whatsoever. *See Lust v. Miller*, 4 F.2d 293, 294–95 (D.C. 1925).

---

[6] *See* Roger Colinvaux, *Charitable Giving and Civil Rights: A Defense of Private Remedial Action*, 135 Yale L.J. 549, 595 (2025) ("Quite simply, the remedial use of race in the provision of charitable donative assistance was not recognized as a harm or something that Congress intended to address [with Section 1981], much less prohibit."); Cara McClellan, *Existing Together from the Beginning: Freedom to Contract and Black Mutual Aid*, 120 Nw. U. L. Rev. 97, 97 (2025) ("Relying on § 1981 to prohibit race-conscious charitable work is deeply ahistorical, conflicting with both the purpose of the statute and how race-conscious giving was understood at the time the Civil Rights Act of 1866 was passed.").

The Scholarship is nothing more than a charitable gift, not a bilateral contract supported by genuine mutual obligations and consideration flowing from the recipient.[7] Plaintiffs try to plead around these well-established contract principles by relying on *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, 103 F.4th 765 (11th Cir. 2024), in which a divided Eleventh Circuit panel (reviewing an interim decision denying a preliminary injunction) became the first circuit to apply Section 1981 to a charitable grant contest. Even if *Fearless Fund* were correctly decided (it was not, and it is not binding here), the contest rules in that case are easily distinguishable from CBCF's Scholarship application. As an initial matter, in *Fearless Fund*, the rules informed applicants that by entering, contestants were "agree[ing] to these official rules, which are a contract." *Id.* at 770. No similar language or arrangement is alleged here. Plaintiffs allege that CBCF received permission from applicants to use their information in "annual publications" targeted toward charitable donors. Am. Compl. ¶¶ 27–29. This is an ordinary administrative condition incidental to managing a philanthropic scholarship program, not commercial consideration that CBCF sought as the price of an enforceable promise. *See* Restatement (Second) of Contracts § 71 cmt. c (Am. Law Inst. 1981) ("[A] promise to make a gift is not made a bargain by the promise of the prospective donee to accept the gift, or by his acceptance of part of it. This may be true even though the terms of gift impose a burden on the donee as well as the donor."); *id.* § 24 cmt. b & illus. 2; *Rinck v. Ass'n of Rsrv. City Bankers*, 676

---

[7] To the extent Plaintiffs contend that their characterization of the Scholarship application as a contract must be accepted as true at this stage, that is incorrect. "Construing a complaint liberally in the plaintiff's favor does not entail accepting inferences unsupported by facts or legal conclusions cast in the form of factual allegations." *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 288 (D.C. Cir. 2022) (cleaned up). Whether the application constitutes a contract under Section 1981 is precisely such a legal conclusion, and it is entitled to no presumption of accuracy. *See RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 140 (D.D.C. 2011) ("The determination whether an enforceable contract exists, when based on the contract documents, is a question of law." (quoting *Kramer Assocs. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005))).

A.2d 12, 16 (D.C. 1996) (adopting definition of consideration from Restatement (Second) of Contracts § 71).  Indeed, it is far afield from asking applicants to alter their legal rights by agreeing to arbitration or to provide CBCF with the right to "use th[eir] ideas without any additional compensation"—all elements of the self-described "contract" that the *Fearless Fund* panel analyzed.  103 F.4th at 770.

Plaintiffs also allege that the Scholarship is a contest or form of unilateral contract that is covered by Section 1981.  Am. Compl. ¶ 58.  This legal conclusion masquerading as an allegation is wrong.  Nothing in the 2026 Scholarship application suggests that submission of the application creates any obligations on CBCF's part.  CBCF has made no definite offer to be bound upon a specified performance, and it retains absolute discretion to award or withhold the Scholarship funds.  *See* 1 Williston on Contracts § 4:13 (4th ed.) ("[A]n ordinary advertisement for bids or tenders is not itself an offer, but the bid or tender is an offer which creates no right until accepted."); Austin-Hillery Decl. Ex. 3.  The cases Plaintiffs cite in the Amended Complaint to contend otherwise are inapposite.  In *Hampton v. Dillard Department Stores, Inc.*, a retail store issued a physical coupon that promised a free fragrance sample to any customer making a purchase.  247 F.3d 1091, 1100 (10th Cir. 2001).  That coupon constituted a valid invitation to accept an offer by performance (making a purchase)—the store made an enforceable offer to be bound by the coupon's terms.  *Id.* at 1104–05.  Similarly, in *Personavera, LLC v. College of Healthcare Information Management Executives*, contest participants "entered [a] Challenge by accepting an online agreement . . . which stated the terms of the Challenge."  2021 WL 1313108, at *2 (E.D. Pa. Apr. 8, 2021).  There is no similar agreement here.  Instead, the Amended Complaint describes a charitable scholarship selection process where CBCF evaluates applications and awards

26

philanthropic funds at its discretion. It does not identify any promise by CBCF that becomes automatically enforceable because a student submitted materials.

Because Scholarship applicants are seeking a discretionary gift, not engaging in a bargained-for exchange of things of value, the act of applying does not constitute the "making" of a contract under Section 1981. Plaintiffs have not alleged—and cannot allege—any legally protected contractual interest. Count One fails as a matter of law and should be dismissed with prejudice.

### 2. Plaintiffs fail to allege that the member-district requirement discriminates based on race, as required by Section 1981 (Count Two)

Plaintiffs' allegations regarding the purported requirement that Scholarship applicants reside or go to school in a CBC member's district fail for the reasons described above—this Court lacks subject matter jurisdiction, *see supra* Part IV(A), and the Scholarship does not constitute a contract, *see supra* Part IV(B)(3). In addition, as with Count One, the member-district requirement has no racial component, so Plaintiffs cannot plausibly allege the intentional discrimination or but-for causation required under Section 1981. The difference between the two Counts is that Plaintiffs acknowledge that the member-district requirement is "race neutral." Am. Compl. ¶ 23. They attempt to plead around that dispositive fact by alleging that the purported requirement is a proxy for race and discriminates against applicants based on their association with their congressional representatives. *Id.* ¶¶ 68–69. Both theories fail.

#### a) Plaintiffs fail to allege proxy discrimination

To adequately allege proxy discrimination, Plaintiffs must show that the member-district requirement—although "race neutral," Am. Compl. ¶ 23—is "so closely associated" with Black and African American students that "discrimination on the basis of [the requirement] is, constructively, facial discrimination" against Plaintiffs' non-Black student members. *Pac. Shores*

27

*Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013).  This requires Plaintiffs to allege facts which would support the conclusion that attending school or residing in a CBC member's district is "almost exclusively" an indicator that a student is Black or African American.  *Id.*; *see also Guinn v. United States*, 238 U.S. 347, 364 (1915) (finding voting eligibility requirement was proxy for race because even though "it contains no express words of [racial] exclusion," "the standard itself inherently brings that result into existence").

Plaintiffs have entirely failed to allege facts that could make this showing, nor could they. They do not even allege (because they cannot) that most CBC members represent majority Black constituencies.  *See* Am. Compl. ¶ 23 (alleging that, with one exception, "all majority-black districts have a Representative who is a member of the CBC" but not that all districts with a CBC member Representative are majority Black).  Indeed, as Plaintiffs acknowledge, the majority of Black Americans live in jurisdictions that are *not* represented by a CBC member.[8]  *Id.*; *see also Hearne v. Bd. of Educ. of City of Chicago*, 185 F.3d 770, 776 (7th Cir. 1999) (rejecting contention that residence in Chicago was a proxy for race because "[t]here are substantial numbers of African Americans in many other cities in the state").  And even for those CBC members who represent

---

[8] Moreover, even if Plaintiffs had alleged that most CBC-member districts are majority Black, that would still be insufficient to prove intentional discrimination under Section 1981.  An example illustrates why this is so: Dozens of organizations and funds offer scholarships available only to students living or studying in Maine.  *See, e.g.*, Maine Community Foundation, *Scholarships Available Statewide*, https://www.mainecf.org/find-a-scholarship/available-scholarships/available-statewide/ (last visited July 16, 2026).  If Plaintiffs' proxy discrimination theory is correct, those scholarships all would discriminate based on race, too, because Maine's population is over 90% white.  *See* U.S. Census Bureau, *Hispanic or Latino, and Not Hispanic or Latino by Race – 2020*, https://data.census.gov/table/DECENNIALPL2020.P2?q=p2&g=010XX00US$0400000 (last visited July 16, 2026).  The absurdity of this result underscores why case law requires more than a census report to establish intentional race discrimination based on geographic eligibility requirements.

28

majority Black districts, their constituents of course include many others of various races. *See* Am. Compl. ¶ 23.

Plaintiffs also have not alleged any facts showing that students who attend school in a CBC member's district are "almost exclusively" Black. *See Pac. Shores Props.*, 730 F.3d at 1160 n.23. For example, they harp on the fact that "the CBC includes D.C.'s nonvoting delegates and Senators" because, according to Plaintiffs, D.C. has a high "black population[] by percentage" compared to many states. Am. Compl. ¶ 23. But they do not explain why attendance at D.C.'s colleges and universities—including Georgetown University, George Washington University, American University, and Catholic University—is "almost exclusive[] indicators" of race. *Pac. Shores Props.*, 730 F.3d at 1160 n.23. They are not. And students at all of these schools—and those attending any other school in a district represented by a CBC member—would be eligible to apply for and, if qualified, receive the Scholarship.

In sum, Plaintiffs have fallen far short of plausibly pleading that the Scholarship's CBC-member-district residency requirement functions as a proxy that limits the Scholarship to Black applicants and, thus, constitutes race discrimination.

### b) Plaintiffs fail to allege associational discrimination

Plaintiffs also attempt to skirt the race neutrality of the member-district requirement by invoking "associational discrimination": that the Scholarship "discriminat[es] against applicants based on the race of their congressional representatives." Am. Compl. ¶ 68. Put differently, Plaintiffs allege that it does not matter that their student members' races are irrelevant to the member-district-requirement analysis, because it is enough that the analysis would account for the race of their members' congresspeople. This is wrong for two reasons.

*First*, Section 1981 requires that discrimination be on account of the plaintiff's race. *See, e.g.*, *Floyd v. Amite Cnty. Sch. Dist.*, 581 F.3d 244, 250–51 (5th Cir. 2009). For that reason,

29

associational discrimination claims do not lie where the race of the plaintiff is irrelevant to the underlying discrimination. *Id.* Instead, they are typically sufficiently pled only where there is "animus against the [plaintiff] because of his association with persons of another race." *Id.* (rejecting associational discrimination claim by Black high school coach who coached white athletes because there was no "indicat[ion] that any animus . . . was directed at him because of his relationship with these athletes;" "[r]ather, . . . the racial animus was directed solely towards the white students," and not the coach, "on the basis of his race"); *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) ("[W]here an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own* race."); *Rivera v. Townsquare Media Broad., LLC*, 309 F. Supp. 3d 441, 448 (W.D. Tex. 2018) (rejecting Hispanic plaintiff's associational discrimination claim because the defendant's "alleged racial animus was directed solely toward the black men [with whom plaintiff] associated," and the plaintiff failed to show how "his associational discrimination claim implicates his own race in any way"). Each of the cases on which Plaintiffs rely in their Amended Complaint acknowledges the same, Am. Compl. ¶ 68, concluding that Section 1981 recognizes discrimination claims based on "interracial marriage," *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir. 1986), or discrimination "against a white person because of his association with blacks," *Fiedler v. Marumsco Christian Sch.*, 631 F.2d 1144, 1150 (4th Cir. 1980) (interracial marriage); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1266–67 (10th Cir. 1989) (white lawyer accepting representation of Black clients). Because Plaintiffs do not allege that their members' races differ from the races of their Representatives in Congress or otherwise make any allegations concerning how their own race is implicated by the member-district requirement, they have not plausibly alleged associational discrimination. Nor could they: Even under Plaintiffs'

30

view, students of all races are ineligible to apply for the Scholarship if they do not satisfy the member-district requirement.

*Second*, absent an allegation of "at least some existing relationship" with the associated individual, a plaintiff cannot state an associational discrimination claim. *Lowe v. STME, LLC*, 354 F. Supp. 3d 1311, 1315–16 (M.D. Fla. 2019) (dismissing Section 1981 claim with prejudice). Federal courts across the country have held that a plaintiff's relationship must be sufficiently close to "constitute [a] protected 'association.'" *Pittman v. Gen. Nutrition Corp.*, 515 F. Supp. 2d 721, 746 (S.D. Tex. 2007) (no Section 1981 associational discrimination claim based on coworker relationship where plaintiff had not alleged "that the two had a personal, social or intimate friendship, or that they even had worked closely together"); *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 694 (E.D. Pa. 2016) (finding in Title VII context that, in the absence of a "spousal or familial relationship," "the relationship between co-workers is [not] a 'substantial relationship' as would give rise to an associational discrimination claim"), *aff'd*, 769 F. App'x 57 (3d Cir. 2019); *Baker v. Wilmington Trust Co.*, 320 F. Supp. 2d 196, 203 (D. Del. 2004) (collecting cases holding that a "friendly acquaintance" and "good friendship" were insufficient relationships to support associational discrimination claims).  Plaintiffs here have not alleged any facts showing that their members have any "interpersonal relationship[]" with their Representatives in Congress that rises to the level of a "protected association," let alone a close relationship on par with those Plaintiffs cite in their Amended Complaint.[9] *Pittman*, 515 F. Supp. 2d at 746.  Indeed, they have not alleged any facts about their members' interactions with their Representatives at all.  This failure, too, conclusively defeats Plaintiffs' associational discrimination claim.

---

[9] *See* Am. Compl. ¶ 68 (citing *Parr*, 791 F.2d at 890 ("interracial marriage"); *Fiedler*, 631 F.2d at 1147, 1150 ("romantic relationship"); and *Phelps*, 886 F.2d at 1266–67 (attorney-client relationship)).

### C.    Plaintiffs Cannot State a Claim Because CBCF's Charitable Donations and Related Speech are Protected by the First Amendment

For the reasons detailed above, Plaintiffs' claims should be dismissed; this Court lacks subject matter jurisdiction, and Plaintiffs have not plausibly alleged any Section 1981 violation. But Plaintiffs' claims also should be dismissed for an additional reason: Their demand that this Court prematurely intervene to dictate how CBCF allocates its Scholarship dollars is driven by Plaintiffs' disagreement with the Foundation's protected viewpoints and speech—that is, the CBCF's goals for the Scholarship and its statements about those goals. Granting the relief Plaintiffs request would thus have an impermissible chilling effect on the Foundation's First Amendment-protected activity. *See* U.S. Const. amend. I; *Citizens United v. FEC*, 558 U.S. 310, 327 (2010) (declining to interpret statute in manner that would "create an inevitable, pervasive, and serious risk of chilling protected speech").

Plaintiffs allege that CBCF's goal in awarding the Scholarship is "to cultivate Black American emerging political leaders," Am. Compl. ¶ 14, a goal that is consistent with the CBC's mission of "ensur[ing] that African Americans and other marginalized communities in the United States have the opportunity to achieve the American Dream." *Supra* Part II(A). In describing the Scholarship, the Foundation has expressed its belief that the award furthers these aims by providing opportunities for "academically talented and highly motivated African-American or Black students." *Supra* Part IV(A)(1)(a). Indeed, the Scholarship was created in response to funding cuts that disproportionately affected students of color, creating financial barriers for African-American and Black students who might otherwise become political leaders. *Id.* The Scholarship's purpose thus reflects the Foundation's First Amendment-protected "viewpoint that the exclusion of historically disadvantaged groups is undesirable." *Thakur v. Trump*, 163 F.4th 1198, 1206 (9th Cir. 2025). And, contrary to Plaintiffs' claims, the Foundation's motivations and

32

goals for the Scholarship, as well as its speech articulating those goals, are fully protected by the First Amendment; they cannot serve as a basis for liability under Section 1981 or otherwise. *See Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 154–55 (D.D.C. 2025) (finding government's claim that law firm engaged in "racial discrimination" was impermissibly "motivated only by [the firm's] First Amendment protected speech in support of diversity").

Further, the First Amendment fully protects the Foundation's charitable donations made in support of its mission. *Citizens United*, 558 U.S. at 339 (concluding that the statute's "prohibition on corporate independent expenditures" was "a ban on speech" that violated the First Amendment); *see also Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 43 (D.D.C. 2025) ("It is settled law" that "donations" are political speech "protected by the First Amendment."). These protections apply to donations by CBCF to support the development of future political leaders, just as they do to donations made by corporations and other private entities to support current political candidates or causes. *Cf. Citizens United*, 558 U.S. at 339. Donating money "functions as a general expression of support for the recipient," *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799 (1985), and implicates not only freedom of speech but freedom of association, too.[10] *See First Choice Women's Res. Centers, Inc. v. Davenport*, 146 S. Ct. 1114, 1130 (2026) (First Amendment barred subpoena for donor information since it would "discourage reasonable individuals from associating with a group" and, as a result, "discourage groups from expressing dissident views"). Accordingly, even if CBCF were to award scholarships

---

[10] For these reasons, the Supreme Court has similarly recognized that the solicitation of charitable donations "involve[s] a variety of speech interests . . . that are within the protection of the First Amendment." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 788 (1988) (quoting *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980)). And because "[c]ourts, too, are bound by the First Amendment," *Citizens United*, 558 U.S. at 326, they must "presume that speakers, not the government, know best both what they want to say and how to say it," *Riley*, 487 U.S. at 790–91.

33

based on race (which it is not doing in 2026), that would also be protected activity.

Plaintiffs' suit asks the Court to discourage, or even sanction, the Foundation's constitutionally protected speech (including its message and its financial support for that message and individual future leaders). CBCF has averred that it does not (and never did) intend to award the 2026 Scholarship based on applicants' race. Plaintiffs nonetheless seek a court order dictating the Foundation's criteria for selecting who it would like to support as an emerging political leader. The only purpose such an order could serve is to chill the Foundation from considering or even discussing any criteria relevant to its ultimate political goals—namely, "cultivat[ing] Black American emerging political leaders," Am. Compl. ¶ 14, and providing opportunity to African Americans and other marginalized communities. *Supra* Part II(A).

It is no response for Plaintiffs to say the Court will not sanction CBCF if it strictly complies with the law. "[T]he value of a sword of Damocles is that it hangs—not that it drops." *First Choice*, 146 S. Ct. at 1127 (internal quotation marks omitted); *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 110 (D.D.C. 2025) (enjoining government from singling out law firm for EEOC investigation based on protected speech). Plaintiffs' effort to chill CBCF's exercise of its First Amendment rights should be rejected.

## V.    CONCLUSION

The Court should dismiss Plaintiffs' claims for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiffs' claims are not ripe, Plaintiffs do not have standing, and Plaintiffs' claims are barred by the Speech or Debate Clause. Alternatively, the Amended Complaint should be dismissed with prejudice under Rule 12(b)(6) because Plaintiffs have not pled a plausible claim for relief, and the relief they request would violate the First Amendment.

Dated:   July 16, 2026                          Respectfully submitted,


                                                */s/ Jason C. Schwartz*

Alphonso David (*pro hac vice* application          Jason C. Schwartz (D.C. Bar No. 465837)
forthcoming)                                        Stuart F. Delery (D.C. Bar No. 449890)
GLOBAL BLACK ECONOMIC FORUM                         Zakiyyah T. Salim-Williams (D.C. Bar No.
34 35th Street, Suite 5A                            90043875)
Brooklyn, New York 11232                            GIBSON, DUNN & CRUTCHER LLP
Tel: (646) 872-1924                                 1700 M Street, N.W.
alphonso.david@gbef.com                             Washington, D.C. 20036-4504
                                                    Tel: (202) 955-8500
                                                    jschwartz@gibsondunn.com
Gregg J. Costa (*pro hac vice* application          sdelery@gibsondunn.com
forthcoming)                                         zswilliams@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Tel: (346) 718-6600                                 Mylan L. Denerstein (*pro hac vice* application
gcosta@gibsondunn.com                               forthcoming)
                                                    GIBSON, DUNN & CRUTCHER LLP
                                                    200 Park Avenue
Katherine M. Marquart (D.C. Bar No.                 New York, NY 10166-0193
1044618)                                            Tel: (212) 351-4000
GIBSON, DUNN & CRUTCHER LLP                          mdenerstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071
Tel: (213) 229-7000
kmarquart@gibsondunn.com


          *Attorneys for Defendant Congressional Black Caucus Foundation, Inc.*